# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 18-22731-Civ-WILLIAMS/TORRES

CARMEN PACINELLI,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.

_____/

## ORDER ON DEFENDANT'S *DAUBERT* MOTION

This matter is before the Court on Carnival Corporation's ("Defendant" or "Carnival") *Daubert* motion to exclude the testimony of Carmen Pacinelli's ("Plaintiff") expert, Captain Bret C. Gilliam's ("Captain Gilliam"). [D.E. 19]. Plaintiff responded on June 21, 2019 [D.E. 21] to which Defendant replied on June 29, 2019. [D.E. 22]. Therefore, Defendant's motion is now ripe for disposition. After careful review of the motion, response, reply, relevant authority, and for the reasons discussed below, Defendant's *Daubert* motion is **GRANTED in part** and **DENIED in part**.[1]

---

[1] On June 12, 2019, the Honorable Kathleen Williams referred Defendant's *Daubert* motion to the undersigned Magistrate Judge for disposition. [D.E. 20].

## I. BACKGROUND

Plaintiff was a passenger onboard the Carnival *Miracle*, who fell as he boarded a tender boat[2] from the cruise ship in the port of Belize, injuring his ankle in the process. Plaintiff alleges that while stepping from the cruise ship, Carnival failed to use a gangplank (a movable bridge for passengers to walk across) and that passengers had to step from the ship directly onto the tender. As Plaintiff stepped from the cruise ship, the tender suddenly lurched away from the ship and he began to fall forward with one knee landing on the tender and the other leg dangling between the tender and the ship. The tender then lurched back toward the ship and Plaintiff's foot was pinched between the side of the tender and the side of the cruise ship, severely injuring his ankle. Because of Defendant's negligence in following proper safety protocols, Plaintiff filed a one count complaint for negligence on July 6, 2018. [D.E. 1].

## II. APPLICABLE PRINCIPLES AND LAW

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702. The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a

---

[2] A tender boat is more commonly understood as a smaller boat that shuttles passengers from a cruise ship to shore.

preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589).[3] The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Also, in its role as "gatekeeper," its duty is not "to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)

To facilitate this process, district courts engage in a three part inquiry to determine the admissibility of expert testimony:

---

[3] Rule 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

3

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts"; "the courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

In determining the reliability of a scientific expert opinion, the Eleventh Circuit also considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted). The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95. It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the

4

jury.'" *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence." *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

"[T]he objective of [the gatekeeping role] is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The district court's role is especially significant since the expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert,* 509 U.S. at 595 (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended,* 138 F.R.D. 631, 632 (1991)).

### III. ANALYSIS

Defendant's *Daubert* motion seeks to exclude Plaintiff's expert, Captain Gilliam, who Plaintiff retained as a liability expert. Defendant argues that Captain

5

Gilliam presents himself as a maritime safety expert, but that his opinions are unreliable, conclusory, and based on nothing more than inadmissible hearsay. Defendant also claims that Captain Gilliam is unqualified and that his testimony is unhelpful because it mirrors that of an attorney, not a maritime expert. Alternatively, Defendant requests that Captain Gilliam's testimony be excluded under Rule 403 because – if he testifies at trial – there is a substantial risk that he will either confuse or mislead the jury. Defendant therefore seeks to exclude the testimony and expert report of Captain Gilliam because he fails to satisfy several *Daubert* requirements.

### A. *Whether Captain Gilliam is Qualified*

Defendant argues that Captain Gilliam cannot serve as an expert in this case because he is unqualified to opine on whether Carnival breached its duty of care. Defendant claims that – while Captain Gilliam represents that he is a marine and diving expert – his experience is limited solely to diving emergencies. Because Captain Gilliam's experience is limited to diving emergencies and unrelated to procedures concerning the disembarkation of a cruise ship to a tender boat, Carnival concludes that Captain Gilliam is unqualified under *Daubert*.

An expert may be qualified to testify in multiple ways: "'by knowledge, skill, experience, training, or education'" and "not necessarily unqualified simply because her experience does not precisely match the matter at hand." *Furmanite Am., Inc.*, 506 F. Supp. 2d at 1129 (citing *Maiz,* 253 F.3d at 665, 669). "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the

credentials of the proposed expert in light of the subject matter of the proposed testimony.'" *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting *Jack v. Glaxo Wellcome, Inc.,* 239 F.Supp.2d 1308, 1314–16 (N.D. Ga. 2002)). "In other words, a district court must consider whether an expert is qualified to testify competently regarding the matters he intends to address." *Clena Investments, Inc.*, 280 F.R.D. at 661 (citing *City of Tuscaloosa,* 158 F.3d at 562–63).

Determining an expert's qualifications is not a stringent inquiry "and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (citations omitted); *see also Johnson v. Big Lots Stores, Inc.,* 2008 WL 1930681, *14 (E.D .La. Apr. 29, 2008) (summarizing *Rushing v. Kansas City S. Ry. Co.,* 185 F.3d 496, 507 n. 10 (5th Cir. 1999), as "explaining that after an individual satisfies the relatively low threshold for qualification, the depth of one's qualification may be the subject of vigorous cross-examination"); *see also Martinez v. Altec Indus., Inc.,* 2005 WL 1862677, *3 (M.D. Fla. Aug. 3, 2005) (quoting *Rushing,* 185 F.3d at 507 ("As long as some reasonable indication of qualifications is adduced . . . qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity")).

Here, Defendant seeks to exclude Captain Gilliam because his experience is limited to diving emergencies. Defendant' argument is misplaced, however, because Captain Gilliam has significant maritime experience related to the operation and

7

safety protocols of maritime vessels. For instance, Captain Gilliam has been professionally involved in all facets of the maritime trade since 1971. He has also been directly involved in the operations, training, and safety protocols of passenger vessels in the Caribbean, Bahamas, Florida, Hawaii, and various international locations. Indeed, Captain Gilliam has served as a safety and operations consultant for several maritime operations and he is even responsible for the operations of his own vessels. While Defendant attempts to narrow Captain Gilliam's qualifications solely to diving emergencies, Captain Gilliam's background, experience, and history with the operation of safety protocols undermines that contention. Accordingly, Defendant's motion to exclude Captain Gilliam as unqualified is **DENIED**.

### B. *<u>Whether Captain Gilliam is Reliable</u>*

The second reason Defendant seeks to strike Captain Gilliam is because he failed to rely on a discernible methodology. Defendant claims that Captain Gilliam only reviewed the complaint, Plaintiff's written discovery, medical responses, and Plaintiff's deposition testimony. While Captain Gilliam also called and interviewed several witnesses who were near the scene of the incident, Defendant contends that Captain Gilliam did not view any photographs from the day of the incident nor did he conduct any inspection or observation of the boarding process. Because Captain Gilliam's opinions are based solely on his own interpretation of Plaintiff's deposition testimony and hearsay from passenger witnesses, Defendant concludes that Captain Gilliam cannot be designated as an expert because he is merely a mouthpiece for the testimony of other lay witnesses.

"The reliability standard is established by Rule 702's requirement that an expert's testimony pertain to 'scientific . . . knowledge,' since the adjective 'scientific' implies a grounding in science's methods and procedures, while the word 'knowledge' connotes a body of known facts or of ideas inferred from such facts or accepted as true on good grounds." *Daubert*, 509 U.S. at 580. This entails an assessment of whether the "methodology underlying the testimony is scientifically valid." *Id*. at 592. The four non-exhaustive factors used to evaluate the reliability of a scientific expert opinion include the following:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Frazier*, 387 F.3d at 1262 (citations omitted).

Defendant's argument is unconvincing because Captain Gilliam relied on sworn testimony in the record to develop his opinion that safety protocols may not have been followed. Plaintiff testified, for instance, that there were only two crewmembers present at the time of the incident and that neither physically assisted him in disembarking the cruise ship. [D.E. 19-1 at 7]. Plaintiff also testified that there was nothing on the tender boat that he could have held onto as he attempted to disembark and that after he fell crewmembers tightened the ropes between the boats to secure the two vessels. *Id*.

Defendant complains that Captain Gilliam failed to develop any methodology and that he compounded his mistakes by relying on the unsworn recollection of

9

three witnesses. Defendant also asserts that Captain Gilliam failed to rely on a single study, treatise, article, book, rule, or regulation and that his expert report must be stricken in its entirety.[4] We agree, in some respects, that Defendant has identified potential weaknesses in Captain Gilliam's expert report. But, we cannot find that it is unreliable under *Daubert* because – given the factual circumstances that Plaintiff identified – Captain Gilliam has the experience to opine on whether Carnival met industry standards in how passengers disembarked the cruise ship. While the methodology Captain Gilliam used might not have been the most compelling, there is no question that one exists because Captain Gilliam took the facts provided from Plaintiff's worn testimony and compared them to how a cruise ship should assist passengers in disembarking a cruise ship.

Defendant also faults Captain Gilliam for failing to review any photos from the day of the incident and for failing to conduct an inspection or observation of the boarding process. While both suggestions may have strengthened Captain Gilliam's expert report, his experience on how to disembark a cruise ship when coupled with Plaintiff's testimony provides the necessary connection to opine on whether Carnival exercised a duty of reasonable care. This is not a situation, as Defendant appears to suggest, where "the only connection between the conclusion and the existing data is the expert's own assertions . . . ." *Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1197 (11th Cir. 2002) ("[T]he Supreme Court made it clear that testimony based solely on the experience of an expert would not be admissible. The

---

[4] Defendant points out that Captain Gilliam referenced several rules and regulations but that he failed to specify or explain how any of those rules apply to the facts of this case.

expert's conclusions must be based on sound scientific principles and the discipline itself must be a reliable one. The key consideration is whether the expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"). Instead, Captain Gilliam relied on the facts that Plaintiff provided under oath and compared the alleged actions of Carnival crewmembers to how a cruise ship exercises reasonable care in assisting passengers to disembark a cruise ship. Carnival may be skeptical of Plaintiff's testimony, but that is not a question to be decided on a *Daubert* motion. We cannot discredit the findings of Captain Gilliam at this stage of the case.

Indeed, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech*, 326 F.3d at 1341. This means that – rather than opining on whether Captain Gilliam could have developed a better methodology – Defendant may use Captain Gilliam's expert as fodder for cross-examination that may decrease the weight and credibility of his opinion. And to that end, it is important to remember that in seeking to exclude an expert under *Daubert*, an "expert's method need not be perfect, nor need he apply it perfectly." *Banta Properties, Inc. v. Arch Specialty Ins. Co.*, 2011 WL 13096149, at *4 (S.D. Fla. Dec. 20, 2011) (citing *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 2011 WL 2295269, at *5-6 (S.D. Fla. June 8, 2011) (noting that a rebuttal expert could testify to the flaws in a report based on imperfect data or imperfect methodology)). We therefore conclude that Captain Gilliam's expert report is "not so unreliable that the Court can rule as a matter of law that the jury should not hear his opinion."

*Banta Properties, Inc.*, 2011 WL 13096149, at *4; *see also Hoff v. Steiner Transocean, Ltd.*, 2014 WL 273075, at *4 (S.D. Fla. Jan. 24, 2014) ("As long as a reliable basis exists for the expert's opinion, it is admissible, and it is then up to the parties to vet the opinion before the jury."). Accordingly, Defendant's motion to exclude Captain Gilliam's expert report as unreliable is **DENIED**.[5]

### C. *Whether Captain Gilliam is Helpful*

Defendant's final argument is that Captain Gilliam's opinions will not assist or help the trier of fact. Defendant argues that Captain Gilliam's expert report is nothing more than a conclusory set of statements following a copy and paste of self-serving interviews with other passengers and that there is nothing scientific, technical, or specialized about Captain Gilliam's opinions. Defendant also claims that the opinions are defective because they are no different than an attorney's closing arguments. For these reasons, Defendant concludes that Captain Gilliam is unhelpful to the trier of fact.

"[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person" and offers something "more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63 (citations omitted). While "[a]n expert may testify as to his opinions on an

---

[5] Carnival takes issue with Captain Gilliam's decision to conduct telephone interviews with witnesses at the scene of the incident as support for his conclusion that Carnival may not have exercised its duty of reasonable care. That is, Defendant claims that the expert report cannot stand because it relies on nothing more than inadmissible hearsay. Defendant's argument is unpersuasive, however, because, for the reasons set forth above, Plaintiff's deposition testimony provides the underlying connection needed for Captain Gilliam to develop his methodology and compare Carnival's actions to industry standards.

12

ultimate issue of fact . . . he 'may not testify as to his opinion regarding ultimate legal conclusions.'" *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) (quoting *Delatorre,* 308 F. App'x at 383). The Eleventh Circuit has also made clear that "merely telling the jury what result to reach is unhelpful and inappropriate." *Umana-Fowler,* 49 F. Supp. 3d at 1122 (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)).

Here, Defendant's arguments are not entirely without merit because Captain Gilliam's expert report contains many impermissible legal conclusions. Captain Gilliam opines, for example, (1) that "[t]here were multiple breaches of duty and care," (2) that there was a "[f]ailure to exercise reasonable care under the circumstances to properly protect the safety of passengers on the voyage," (3) that Plaintiff "did nothing wrong in the manner of his activities," (4) that there was a "blatant and reckless breach[] of duty," and (5) and that "[t]hese failures . . . constitute an extreme departure from the ordinary standard of care." [D.E. 19-1 at 18-19]. These legal conclusions are not allowed because the Eleventh Circuit has repeatedly made clear that legal conclusions or statements instructing what conclusion the jury should reach are impermissible to pass muster under *Daubert*. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005) ("[C]ourts must remain vigilant against the admission of legal conclusions") (citations & quotations omitted); *see also Montgomery*, 898 F.2d 1541 (11th Cir. 1990) ("An expert may not . . . merely tell the jury what result to reach.").

In light of these principles, Captain Gillian's expert report suffers from many of the same deficiencies that Judge Cohn identified with respect to another expert in *Higgs v. Costa Crociere S.p.A. Co.*, 2016 WL 4370012 (S.D. Fla. Jan. 12, 2016). In *Higgs*, Judge Cohn found that an expert report contained impermissible legal conclusions because it included statements that the defendant was "at fault" and that the crew was "careless." As a result, Judge Cohn struck those statements because they ran afoul of Eleventh Circuit precedent and *Daubert*. But he otherwise admitted the expert's factual opinions. The same reasoning applies here and the Court finds no reason to depart from the well-reasoned conclusion reached in *Higgs*.

With that being said, Mr. Gilliam's statements on industry standards for cruise ship safety practices is beyond the common knowledge of the average lay person and is helpful in establishing the applicable standard of care for Plaintiff's negligence claim. Mr. Gilliam's opinions as to the cause of Plaintiff's injuries is also helpful because it explains how the training of crew members and the stability of the tender boats complies with industry standards. Nonetheless, the Court agrees that pages eighteen and nineteen of the expert report is interspersed with impermissible legal conclusions and that these must be excluded under *Daubert*. Therefore, Defendant's motion to exclude the testimony and expert report of Mr. Gilliam is **GRANTED** but only to the extent that Mr. Gilliam's testimony consists

of impermissible legal conclusions. As for any other relief Defendant seeks, Defendant's motion is **DENIED**.[6]

## IV. CONCLUSION

For the foregoing reasons, Defendant's *Daubert* motion to exclude the testimony of Captain Gilliam [D.E. 183] is **GRANTED in part** and **DENIED in part**:

A. Defendant's motion to exclude Captain Gilliam as unqualified, unreliable, or otherwise inadmissible under Rule 403 is **DENIED**.

B. Defendant's motion to exclude Captain Gilliam's legal conclusions is **GRANTED in part** and **DENIED in part**. To the extent Mr. Gilliam's testimony consists of impermissible legal conclusions, Defendant's motion is **GRANTED**. As for any other relief, Defendant's motion is **DENIED**.

---

[6] Alternatively, Defendant argues that Mr. Gilliam's testimony should be excluded under Fed. R. Evid. 403 because there is a substantial risk that it will confuse or mislead the jury. Rule 403 permits the exclusion of relevant evidence when the probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and/or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403 (emphasis added). Courts are cautioned, however, to use Rule 403 sparingly, *see, e.g., United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983), because the federal rules favor admission of evidence and in part because relevant evidence is inherently prejudicial to a defendant. *See id.* (citing to other sources). Defendant's arguments are unpersuasive for the same reasons set forth above because Mr. Gilliam provides helpful insight into whether Carnival complied with industry standards and whether crewmembers met the standard of care for passengers disembarking a cruise ship. Therefore, we are unpersuaded that Mr. Gilliam's testimony will confuse the jury because once his legal conclusions are excluded, his opinions are relevant as to whether Defendant was negligent for Plaintiff's injuries.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of July, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge